FILED

2017 JUL -6 PM 12: 50

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | <u>S U P E R S E D I N G</u><br><u>I N D I C T M E N T</u> |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE JAMES S. GWIN |
| | ) | |
| GARY J. BOECKER, | ) | CASE NO. <u>5:17CR217</u> |
| | ) | Title 18, Sections 1014, 1343, |
| Defendant. | ) | and 1957, United States Code |

The Grand Jury charges:

<u>GENERAL ALLEGATIONS</u>

At all times relevant to this Superseding Indictment, unless otherwise specified:

<u>The Defendant and His Former Law Practice</u>

1.      The defendant, GARY J. BOECKER, was a resident of Hudson, Ohio, and Cuyahoga Falls, Ohio, both located in the Northern District of Ohio, Eastern Division.

2.      In 1983, BOECKER was admitted to practice law in the State of Ohio. As part of his law practice, Boecker and Company, LTD, BOECKER provided various legal services to clients, including estate-planning services. At times, BOECKER also served as a financial advisor for his clients, including establishing and managing trust funds for clients. In January 2015, the Ohio Disciplinary Counsel filed a complaint against BOECKER alleging that he

withdrew funds from a client's trust for his own use and benefit. Following this complaint, BOECKER voluntarily forfeited his law license.

3. BOECKER continued to act as a financial advisor to some of his former law clients after he forfeited his law license.

4. As part of his law practice, BOECKER maintained an Interest on Lawyer Trust Account ("IOLTA") at FirstMerit Bank (now Huntington Bank), bearing account number ending in 1616. An IOLTA is an attorney's trust account used to collect and disburse funds associated with a client. It is for funds that are in a lawyer's possession in connection with their representation of clients, separate from the lawyer's own property. The funds are regulated by the Supreme Court of Ohio.

5. After BOECKER forfeited his law license in January 2015, he was required to close the IOLTA associated with his practice of law. However, between February 2015 and June 2015, BOECKER's IOLTA account had deposits of approximately $600,000 and withdraws of approximately $562,000.

6. In his law practice, BOECKER represented a person known to the Grand Jury and hereinafter referred to as Former Client 1.

7. In his law practice, BOECKER represented a person known to the Grand Jury and hereinafter referred to as Former Client 2. From in or around 2005, through in or around 2016, BOECKER was an employee of Former Client 2's company, an entity known to the Grand Jury. BOECKER was initially employed as a consultant and member of the Board of Directors of Former Client 2's company and later became the Chief Financial Officer ("CFO") of Former Client 2's company. In his role as CFO for Former Client 2's company, BOECKER was responsible for overseeing and managing the company's finances and banking relationships.

### The Defendant's Business Entities

8. BOECKER was the statutory agent and owner of Ocean Jade Health Retreat, LLC ("Ocean Jade"), a limited-liability company registered in the State of Ohio in August 2013. Ocean Jade was a business venture created by BOECKER, located in Florida, and advertised as a "water therapy hotel." Ocean Jade was also known as the "Ocean Jade Health Retreat."

9. BOECKER was the statutory agent for Airider USA, Inc. ("Airider"), a corporation incorporated in the State of Colorado. Airider maintained offices in Evergreen, Colorado and Hudson, Ohio.

10. BOECKER was the sole owner and principal for Boecker & Co., LTD, a company registered in the State of Ohio and located at 2734 Sinton Place, Cleveland, Ohio.

11. BOECKER was the sole owner and agent for CEO BrainTrust, a company incorporated in the State of Ohio and located at 75 Milford Drive, Suite 208, Hudson, Ohio.

12. In May 2016, a member of BOECKER's family registered Holden Total Wellness, LLC ("Total Wellness") in the State of Florida. BOECKER's family member is listed as the Manager of Total Wellness.

13. BOECKER was the statutory agent for US Restore, Inc., ("US Restore"), a corporation with locations in Colorado, Ohio, and Missouri.

### The Financial Institutions and Bank Accounts

14. BOECKER maintained at least three bank accounts at FirstMerit Bank (now Huntington Bank) ("FirstMerit"), including account numbers ending in 8697, 1608, 1616, and 6544.

15. Former Client 1 and Former Client 1's family members maintained bank accounts at FirstMerit and Huntington, account numbers ending in 8592, 2775, 1788, and 2330.

16.     Former Client 1 maintained a bank account at Chase Bank ("Chase"), account number ending in 3685.

17.     Former Client 1 maintained a bank account at ING Bank ("ING"), account number ending in 5557.

18.     Former Client 2 maintained a bank account at FirstMerit, account number ending in 9509.

THE FRAUDULENT SCHEME

19.     From in or around January 2014, and continuing through in or around January 2017, BOECKER devised a scheme to enrich himself and to fund his failed business and Ocean Jade business venture in Florida by defrauding clients he represented as an attorney and/or financial advisor and at least one company where he was employed, and to obtain money and property by false and fraudulent representations and promises.  It was part of BOECKER's scheme that he diverted funds from his former clients and at least one company, without their knowledge or authority, to financial accounts BOECKER owned, maintained, or with which he was affiliated or his business ventures was affiliated.

Scheme to Defraud Former Client 1

20.     From as early as 1997, and continuing until approximately April 15, 2016, BOECKER managed Former Client 1's personal bank and trust accounts at Huntington, Chase, and ING.

21.     Former Client 1 considered BOECKER a close family friend and Former Client 1 placed great trust in him.

22.     On or about August 6, 2014, Former Client 1 suffered a stroke and spent time at the hospital and a nursing home recovering.  During this time, BOECKER represented to Former

4

Client 1 that he could assist Former Client 1 with Former Client 1's finances. Based on BOECKER's representations, Former Client 1 agreed to have BOECKER oversee Former Client 1's finances and signed a Power of Attorney Agreement that gave BOECKER authority to pay Former Client 1's living expenses and expenses related to Former Client 1's property in Streetsboro, Ohio. Former Client 1 gave BOECKER Former Client 1's checkbooks and some signed blank checks to facilitate BOECKER's oversight of Former Client 1's finances. Former Client 1 did not give BOECKER authorization to withdraw funds from Former Client 1's accounts for BOECKER's own use and benefit.

23. Starting as early as 2014, BOECKER pitched his "water therapy hotel" project to Former Client 1.

24. BOECKER's made a number of misrepresentations and false statements to Former Client 1 to induce Former Client 1 to invest in Ocean Jade, all of which BOECKER knew at the time were misleading, false, and fraudulent, including: (1) that Ocean Jade would generate Former Client 1 a return on investment of 15% per year; (2) that BOECKER had life insurance policies covering the "big wigs" associated with the project and thus Former Client 1's investment was safe; (3) that BOECKER owned the hotel involved in the project; and (4) that five individuals had already invested in the project and that there was only room for one more investor.

25. Based on BOECKER's false statements and misrepresentations, Former Client 1 agreed to invest $300,000 in BOECKER'S Ocean Jade Project. Specifically, Former Client 1 agreed to pay BOECKER $200,000 from a family trust and $100,000 of Former Client 1's own funds.

26. In addition to the approximately $300,000 that BOECKER obtained from Former Client 1 by means of false statements and misrepresentations, BOECKER also fraudulently accessed accounts associated with Former Client 1 without Former Client 1's permission. From in or around January 2014, and continuing to in or around May 2015, BOECKER fraudulently accessed the personal and trust accounts at Huntington Bank belonging to Former Client 1 and Former Client 1's sister, transferring additional funds of approximately $426,900 from those accounts to accounts owned or maintained by BOECKER, and using those funds for BOECKER's own benefit and the benefit of his business ventures, without the knowledge or authority of Former Client 1.

The Fraudulent Scheme – Former Client 2

27. In or around 1993, Former Client 2 met BOECKER, when BOECKER assisted Former Client 2 with placing an annuity in a trust.

28. In or around July 2015, BOECKER told Former Client 2 that he was retiring from law practice, but did not disclose to Former Client 2 that BOECKER had forfeited his law license because of a complaint lodged with the Ohio Disciplinary Council alleging theft of client funds.

29. From in or around January 2014, and continuing to in or around April 2016, BOECKER caused funds in the amount of approximately $536,300 to be transferred from Former Client 2's company account to BOECKER's personal and business bank accounts, without the authority of Former Client 2 or anyone at Former Client 2's company.

30. BOECKER, while employed at Former Client 2's company, was issued a corporate American Express credit card, ending in number 7-51222. This credit card was exclusively for expenses related to Former Client 2's company. However, BOECKER used this

company credit card for his own personal benefit: from in or around January 2014 to in or around February 2016, BOECKER used Former Client 2's company credit card to make purchases in the amount of approximately $24,275 for goods and services related to BOECKER's Ocean Jade business venture, without the authority or knowledge of Former Client 2's company.

31. In or around November 2015, BOECKER obtained a loan of $296,400 from FirstMerit in the name of Former Client 2's company, by making false and fraudulent statements and misrepresentations to FirstMerit as part of the loan application process.

32. It was further part of the scheme that BOECKER deposited the loan proceeds into an account owned and maintained by BOECKER and used the loan proceeds for his benefit and the benefit of his business ventures.

The Grand Jury further charges:

## COUNTS 1-11
**(Wire Fraud, 18 U.S.C. § 1343)**

33. The allegations in paragraphs 1 through 32 of the General Allegations are re-alleged and incorporated by reference in this count, as though fully restated herein.

34. From in or around January 2014, and continuing through in or around January 2017, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant GARY J. BOECKER devised and intended to devise a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses and representations, by which BOECKER fraudulently diverted and misappropriated funds from Former Client 1, Former Client 2, and Former Client 2's company, without their knowledge or permission, to enrich himself and his business ventures.

**Use of Interstate Wire Communications**

35.     On or about the dates set forth below, in the Northern District of Ohio, Eastern Division, and elsewhere, BOECKER, for the purpose of executing the scheme and artifice, caused to be transmitted, by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds, to wit: BOECKER ordered the transfer of funds from bank accounts controlled by BOECKER, in the Northern District of Ohio, to F.S., an employee of Ocean Jade, BOECKER's business venture, in Florida:

| Count | Date | Account From Which Funds Originated | Description | Approximate Amount |
|---|---|---|---|---|
| 1 | July 2, 2014 | Ending in 8697 (OJHR Holdings) | Wire Transfer to F.S. | $10,000.00 |
| 2 | September 21, 2015 | Ending in 8697 (OJHR Holdings) | Wire Transfer to F.S. | $9,850.00 |
| 3 | October 30, 2015 | Ending in 8697 (OJHR Holdings) | Wire Transfer to F.S. | $5,000.00 |
| 4 | May 22, 2015 | Ending in 1616 (BOECKER & CO – IOLTA) | Wire Transfer to F.S. | $3,500.00 |
| 5 | May 26, 2015 | Ending in 1616 (BOECKER & CO - IOLTA) | Wire Transfer to F.S. | $3,500.00 |
| 6 | May 27, 2015 | Ending in 1616 (BOECKER & CO - IOLTA) | Wire Transfer to F.S. | $2,850.00 |

36.     On or about the dates set forth below, in the Northern District of Ohio, Eastern Division, and elsewhere, BOECKER, for the purpose of executing the scheme and artifice, caused to be transmitted, by means of wire communications in interstate commerce, writings, signs, signals, pictures, and sounds, to wit: BOECKER used the corporate American Express

8

card issued to him in connection with his employment at Former Client 2's company for his own personal use and to further his Ocean Jade business venture, the charges of which were paid by Former Client 2's company account at FirstMerit, located in the Northern District of Ohio, and electronically processed through Phoenix, Arizona:

| Count | Date | Charge Description | Approximate Amount |
|---|---|---|---|
| 7 | January 28, 2014 | US Airways - CV to Ft. Lauderdale, FL | $1,286.00 |
| 8 | July 17, 2014 | United Air - CV to Ft. Lauderdale, FL | $553.00 |
| 9 | September 26, 2014 | Lauderdale Cyclery-bicycle sls/svc/rpr | $455.75 |
| 10 | December 6, 2014 | United Air - CV to Ft. Lauderdale, FL | $863.20 |
| 11 | December 14, 2014 | United Air - CV to Ft. Lauderdale, FL | $529.20 |

37.    As a result of Defendant's fraudulent conduct, Former Client 1, Former Client 2, and Former Client 2's company were defrauded, suffering a combined loss in excess of $1.5 million.

All in violation of Title 18, United States Code, Section 1343.

The Grand Jury Further charges:

### COUNT 12
**(False Statements in a Loan Application – 18 U.S.C. § 1014)**

38.    The allegations in paragraphs 7 and 27 through 32 of the General Allegations are re-alleged and incorporated by reference in this count, as though fully restated herein.

39.    From on or about August 17, 2015, to on or about November 30, 2015, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant GARY J. BOECKER, knowingly made false statements for the purpose of influencing the action of FirstMerit Bank, an

9

institution the accounts of which were then insured by The Federal Deposit Insurance Corporation, in connection with the application for a $296,400 loan in the name of Former Client 2's company, in that BOECKER presented and caused to be presented to FirstMerit: (1) a false and fictitious loan application reflecting that the purpose of the loan was for the purchase of Former Client 2's company stock from BOECKER and one additional stockholder, when in truth and in fact, and as BOECKER then well knew, Former Client 2's company never intended to procure the loan or purchase the stock; (2) a false and fictitious purchase agreement to purchase/redeem stock of Former Client 2's company that purported to have been signed by Former Client 2 as the buyer and BOECKER as the seller when in truth and in fact, and as BOECKER then well knew, Former Client 2 had not actually signed the purchase agreement; and (3) a false and fictitious loan application indicating that the borrower on the loan was Former Client 2's company, when in truth and in fact, and as BOECKER then well knew, he was the borrower in that the proceeds of the loan were to be paid to BOECKER directly, and Former Client 2's company never received the proceeds of the loan.

All in violation of Title 18, United States Code, Section 1014.

The Grand Jury further charges:

## COUNTS 13-16
### (Engaging in a Monetary Transaction in Property Derived from Criminal Activity – 18 U.S.C. § 1957)

40. The factual allegations of paragraphs 1 through 32 and 39 are realleged and incorporated by reference as if fully set forth herein.

41. On or about the dates set forth below, in the Northern District of Ohio and elsewhere, Defendant GARY J. BOECKER did knowingly engage in and attempt to engage in the following financial transactions by, through, and to a financial institution, affecting interstate

commerce, each of which is a separate count, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, Wire Fraud, in violation of Title 18, United States Code, Section 1343, as alleged in Counts 1 through 11 of this Superseding Indictment:

| Count | Date | Approximate Amount | Originating Financial Institution and Account (All Located in the Northern District of Ohio) | Transaction Description |
|---|---|---|---|---|
| 13 | September 25, 2014 | $56,000 | FirstMerit, Account ending 1616 (BOECKER's IOLTA) | Wire transfer to GARY J. BOECKER |
| 14 | November 24, 2015 | $50,000 | FirstMerit, Account ending 7051 (CEO BrainTrust) | Check payable to OJHR Holdings |
| 15 | November 30, 2015 | $45,000 | FirstMerit, Account ending 7051 (CEO BrainTrust) | Check payable to OJHR Holdings |
| 16 | December 8, 2015 | $73,822 | FirstMerit, Account ending 7051 (CEO BrainTrust) | Check payable to GARY J. BOECKER |

All in violation of Title 18, United States Code, Section 1957.

The Grand Jury further charges:

## FORFEITURE SPECIFICATION

42.   For the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) and (2), and Title 28, United States Code, Section 2461(c), the allegations of Counts 1 through 16 are incorporated herein by reference. As a result of the foregoing offenses, Defendant GARY J. BOECKER shall forfeit to the United States, any property constituting, or derived from, proceeds he obtained directly or indirectly, as the result of such violations; any property real or personal, which constitutes or is derived from proceeds

traceable to a violation of the charges set forth herein; and/or any property, real or personal, involved in such offenses and any property traceable to such property.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.